**Thomas BIEDERMAN, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2013–SC–000034–MR.

Supreme Court of Kentucky.

June 19, 2014.

Erin Hoffman Yang, Assistant Public Advocate, for Appellant.

Jack Conway, Attorney General, Gregory C. Fuchs, Assistant Attorney General, for Appellee.

Opinion of the Court by Justice
KELLER.

Thomas Biederman (Biederman) was convicted by the Boyd Circuit Court of the use of a weapon of mass destruction in the second degree and attempted murder. He was sentenced to forty (40) years' imprisonment. Biederman appeals his sentence as a matter of right under Ky. Const. § 110(2)(b).

Before this Court, Biederman raises four issues: (1) that his conviction violates double jeopardy; (2) that he was wrongly sentenced as a violent offender because the jury did not find serious physical injury to the victim; (3) that it was structural error to not allow the jurors to use their notes during deliberations; and (4) that he was wrongly denied his motion for directed verdict. Having reviewed the record and the parties' arguments, we affirm.

1. Riggs, formerly Janie Biederman, was married to Biederman during the events giving

## I. FACTS.

On July 28, 2011, Janie Riggs's (Riggs [1]) car exploded while parked in the garage outside her place of employment when a pipe bomb went off underneath her seat. Riggs testified that she heard an explosion and initially thought the airbag had malfunctioned. As a result of the explosion, Riggs suffered second and third degree burns, scarring on her arms and around her feet, hearing loss, post-traumatic stress disorder, and a possible foot fracture causing numbness throughout her leg.

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) investigated the case. ATF agent, Ron Sabotchick, testified that the ATF seized from Biederman his family computer, BBs, jumper leads, telephone wires, a Radio Shack altimeter, one of many cans of Polyvinyl chloride (PVC) cement, wire cutting tools, electrical connectors, and Radio Shack receipts. The forensic chemist for the ATF, Michelle Evans, testified that the items found at Biederman's home could be used to make a pipe bomb; however, she could not link the items found at the home to the components used in the pipe bomb that injured Riggs. Additionally, ATF agent, Gary Smith testified that the bomb that exploded in Riggs's vehicle was placed in the vehicle somewhere other than the garage where it exploded; and that the bomb was secured to the floorboard of the vehicle so as not to roll around while the vehicle was being driven.

The Ashland Police Department (ADP) also investigated. Detective Gavin Patrick testified that the ATF seized Biederman's family computer, a search of which revealed several internet searches related to the construction of pipe bombs had been made between late March, 2011 through July 2011. The Commonwealth also pre-

rise to this case; however, at the time of trial, the two were divorced.

sented evidence of the strained marriage between Biederman and Riggs, ridden with financial problems, and that the two possessed a $300,000 life insurance policy.

In the Commonwealth's case, the Commonwealth played video of Biederman talking to two agents. In that video, Biederman told the agents that various people, his attorney, disgruntled neighbors, Jamaican telephone scammers, or church parishioners, could have wanted to kill Riggs. Biederman also told investigators that, as an appraiser in an alleged real estate class action lawsuit, he was going to receive $180,000,000 as a part of his fees for the case; therefore, he had no reason to be concerned with the $300,000 life insurance policy. Ultimately, based upon the aforementioned facts, Biederman was charged and convicted of the use of a weapon of mass destruction in the second degree and attempted murder. We set forth additional facts as necessary in the analysis of Biederman's appeal.

## II. ANALYSIS.

### A. Biederman's Conviction did not Violate Double Jeopardy.

■ Because the basis of the attempted murder charge was the placing of a bomb in Riggs's car, Biederman argues that his convictions of use of a weapon of mass destruction and attempted murder violate double jeopardy. The Commonwealth argues that attempted murder requires several elements that are distinct from the use of a weapon of mass destruction and thus there was no double jeopardy violation. We agree with the Commonwealth.

■ The test to determine if double jeopardy is violated is whether each statute requires proof of an additional fact which the other does not. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). We have previously held that § 13 of the Kentucky Constitution mirrors the Fifth Amendment protections of the United States Constitution and therefore federal double jeopardy cases are germane to double jeopardy cases in Kentucky. *Commonwealth v. Burge*, 947 S.W.2d 805, 809 (Ky.1996). Under the *Blockburger* test, we focus on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence presented at trial. *Mack v. Commonwealth*, 136 S.W.3d 434, 438 (Ky.2004) citing *Illinois v. Vitale*, 447 U.S. 410, 416, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

Biederman was charged with the use of a weapon of mass destruction in the second degree and attempted murder. In pertinent part:

A person is guilty of use of a weapon of mass destruction in the second degree when intentionally, without lawful authority, he or she: (a) [p]laces a weapon of mass destruction at any location in the Commonwealth and, as a result, any person other than the defendant receives physical injury. KRS 527.205.

Attempted murder requires a person acting with the kind of culpability otherwise required for murder, under the circumstances as he believes them to be, to take a substantial step in a course of conduct planned to culminate in the death of another. KRS 506.010; KRS 507.020.

Each statute requires proof of an additional fact which the other does not. The use of a weapon of mass destruction in the second degree, unlike attempted murder, does not require intent to cause death or even the intent to cause injury. The use of a weapon of mass destruction in the second degree requires a person to intentionally place a weapon of mass destruction in the Commonwealth, which attempted murder does not. Attempted murder requires intent to cause death, which the use of a weapon of mass destruction does

not. Therefore, Biederman's conviction did not violate double jeopardy under § 13 of the Kentucky Constitution or the Fifth Amendment of the United States Constitution, and we affirm.

 Biederman also argues that his convictions of attempted murder and use of a weapon of mass destruction violate KRS 505.020(1)(b) and (c). KRS 505.020(1)(b) prohibits multiple convictions arising from a single course of conduct when "inconsistent findings of fact are required to establish the commission of the offenses." KRS 505.020(1)(c) prohibits multiple convictions arising from a single course of conduct when "[t]he offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses."

Biederman argues that KRS 505.020(1)(b) was violated because the instructions required the jury to find that he intended to kill Riggs in order to convict him of attempted murder and that he intended to physically injure her in order to convict him of use of a weapon of mass destruction. However, much like the above analysis under *Blockburger*, inconsistent findings of fact were not required to establish the commission of both offenses. The jury was required to find Biederman intentionally placed a weapon of mass destruction within the Commonwealth and, as a result, Riggs received physical injury. Wholly disconnected from that, the jury was also required to find Biederman intentionally attempted to kill Riggs by placing a weapon of mass destruction within her vehicle. A finding of the intent to place a weapon of mass destruction is not inconsistent with a finding that Biederman did so with the intent to kill. Thus, neither of these findings are inconsistent in violation of KRS 502.020(1)(b).

 Finally, Biederman argues that KRS 502.020(1)(c) was violated because the use of a weapon of mass destruction and attempted murder arose from a single course of conduct uninterrupted by legal process. However, Biederman is wrong in his assertion. The use of a weapon of mass destruction and attempted murder prohibit separate, individual acts and not a course of conduct. Therefore, the Commonwealth may prosecute the two separate offenses even though they arose from the same course of conduct. Additionally, KRS 502.020(1)(c) prohibits multiple convictions when "*the* offense is designed to prohibit a continuing course of conduct . . . ." (emphasis added). Thus, KRS 502.020(1)(c) is designed to prevent multiple convictions of the same offense that arise from the same course of conduct, but only when the offense is designed to prohibit a continuing course of conduct. KRS 502.020(1)(c) is not designed to prevent multiple convictions of different offenses arising from a single course of conduct. *See McKinney v. Commonwealth*, 60 S.W.3d 499, 510 (Ky.2001) (allowing multiple prosecutions for arson, abuse of a corpse, and tampering with physical evidence based upon a single act of setting fire to a building); and *Alexander v. Commonwealth*, 766 S.W.2d 631, 632 (Ky.1988) (permitting multiple prosecutions for murder and wanton endangerment based upon a single shot fired into a crowded room). Because neither the attempted murder statute nor the use of weapons of mass destruction statute prohibit a continuing course of conduct, we agree with the Commonwealth that KRS 502.020(1)(c) does not apply. Therefore, we affirm Biederman's convictions of both crimes.

## B. The Trial Court did not Wrongly Sentence Biederman as a Violent Offender.

The jury convicted Biederman of both counts, finding him guilty of the use of a weapon of mass destruction in the second degree and attempted murder. The jury recommended Biederman be sentenced to forty years' imprisonment, twenty years' imprisonment on each count to run consecutively. During sentencing, the trial judge found that Riggs suffered serious physical injury and defined Biederman as a violent offender.

Biederman argues that he was wrongly sentenced as a violent offender because the judge, instead of the jury, found Riggs sustained serious physical injury. The Commonwealth argues the judge could make that finding. We agree with the Commonwealth.

This argument was not preserved; therefore we review it under a palpable error standard pursuant to RCr 10.26. For an error to be palpable, it must be "easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth,* 206 S.W.3d 343, 349 (Ky.2006). A palpable error occurs when there was a defect in the proceeding which is shocking or jurisprudentially intolerable. *Wise v. Commonwealth,* 422 S.W.3d 262, 276 (Ky. 2013).

"Serious physical injury" means physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ. KRS 500.080. We have previously held that a jury is not required to find serious physical injury to sentence a defendant as a violent offender and that it is proper for a trial judge to make that determination where sufficient evidence exists. *Brooks v. Commonwealth,* 114 S.W.3d 818, 823 (Ky.2003). In *Brooks,* there was evidence before the trial court that showed the defendant inflicted wounds on the victim's neck which subjected the victim to substantial risk of death and caused serious and prolonged disfigurement; and that the victim lost a substantial amount of blood. *Id.* at 824. The trial court found the defendant to be a violent offender. We held the ruling was supported by substantial evidence; and furthermore, the ruling didn't extend a sentence but merely altered the parole eligibility date. Thus, the ruling was appropriate as to the violent offender parole limitation provided in KRS 439.3401, and no constitutional violations occurred because sufficient evidence existed. *Id.* at 824.

Biederman argues that we have implicitly overturned *Brooks* in subsequent unreported cases. In *Rogers v. Commonwealth,* 2000–SC–0103–MR, 2003 WL 22974913 (Ky. Dec. 18, 2003), we held it was error for the trial court to designate an attempted murder conviction and a first-degree robbery conviction as violent offenses when the jury was only instructed to determine if serious physical injury occurred on a single offense. In *Floyd v. Commonwealth,* 2007–SC–000291–MR, 2009 WL 736002, at *9 (Ky. Mar. 19, 2009), we previously held a trial court sentencing a defendant as a violent offender was palpable error. We held this error warranted a new penalty phase because the defendant was convicted of first-degree burglary, a Class–B felony, but that in itself did not render him a violent offender. *Id.* Furthermore, we noted that the trial court lacked the sufficient evidence necessary to find serious physical injury occurred. *Id.*

We disagree with Biederman's analysis for two reasons. First, *Brooks* has not been overruled, nor could it be by nonbind-

ing authorities found in unreported case law. Second, Biederman misapplies *Rogers* and *Floyd*. In *Rogers*, the trial court erred in finding the defendant ineligible for parole as a violent offender, holding first-degree assault to be a violent offense without finding serious physical injury to the victim. *Rogers*, 2000–SC–0103–MR, 2003 WL 22974913, at *5. *Floyd* is dissimilar for like reasons. In *Floyd*, we held there was no proof that the victim's injuries had a prolonged effect, nor were the abrasions and contusions to the victim's face, neck, and wrists life-threatening. Although we held Floyd's attack encompassed enough violence to cause serious physical injury, it is "the severity of the resulting injury rather than … the nature of the attack," that is the test for "serious physical injury" under KRS 439.3401. *Floyd*, 2009 WL 736002 at *10. Here, numerous experts testified that this pipe bomb was capable of causing serious injury or death. Furthermore, Riggs testified that she suffered second and third degree burns, scarring on her arms and around her feet, hearing loss, post-traumatic stress disorder, and a possible foot fracture causing numbness throughout her leg. This constitutes significant evidence of serious injury sufficient to support the trial court's finding.

Biederman also argues a recent United States Supreme Court ruling supports his case. In *Alleyne v. United States*, —— U.S. ——, 133 S.Ct. 2151, 2155, 186 L.Ed.2d 314 (2013), the defendant was found by the lower court to have brandished, as opposed to merely possessed, a firearm in connection with a violent crime. This increased the defendant's mandatory minimum sentence for a firearm offense from five to seven years. *Id.* at 2155. The Supreme Court of the United States held any fact which increases mandatory minimum sentences for a crime is an element of that crime, not a sentencing fac-

tor, and therefore must be submitted to the jury. *Id.* at 2156.

■ Biederman's arguments as to *Alleyne* are also unpersuasive. A trial court's increase in mandatory minimum sentences from five to seven years is wholly separate and apart from the issue of parole eligibility. There is no constitutional right to parole, but "rather parole is a matter of legislative grace or executive clemency." *Land v. Commonwealth*, 986 S.W.2d 440, 442 (Ky.1999). Additionally, the jury in Biederman's trial sentenced him to forty years' imprisonment, twenty years' imprisonment on each count to run consecutively. So while the trial court's sentencing of Biederman as a violent offender ensured he would serve a larger portion of the sentence in prison, it did not expose him to a larger punishment than authorized by the jury's guilty verdict. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, it would behoove the Commonwealth to avoid this issue in the future and put the question of finding serious physical injury before the jury.

For the aforementioned reasons, we see no error by the trial court in finding serious physical injury occurred or in sentencing Biederman as a violent offender.

## C. The Trial Court's Refusal to Allow the Jurors to Use Their Notes in Deliberations was not Reversible Error.

■ During trial, the court acknowledged the jurors' desire to take notes, which was allowed; but, by agreement of both parties, no juror was allowed to use his or her notes in deliberations for fear a "copious note taker" would become the "super-juror." Biederman argues that it was a structural error to not allow the jurors to use their notes in deliberations,

thus mandating reversal. We disagree. This argument was not preserved and is therefore reviewed pursuant to RCr 10.26.

 Structural errors are rare and this Court has recognized a small number of such errors: (1) complete denial of counsel, (2) a biased trial judge, (3) racial discrimination in selection of a grand jury, (4) denial of self-representation at trial, (5) denial of a public trial, (6) defective reasonable-doubt instructions, and (7) erroneous deprivation of the right to counsel of one's choice. *McCleery v. Commonwealth*, 410 S.W.3d 597, 604 (Ky.2013) (quoting *Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35.(1999)). RCr 9.72 states,

> Upon retiring for deliberation the jury may take all papers and other things received as evidence in the case. The jurors *shall* be permitted to take into the jury room during their deliberations any notes they may have made during the course of the trial, but upon request of either party the jury shall be admonished that the notes made by jurors shall not be given any more weight in deliberation than the memory of other jurors.

*Id.* (emphasis added). We have recently held this rule is mandatory and failure to follow it is error. *McCleery*, 410 S.W.3d at 604. However, this Court has also held this error does not rise to the level of structural error warranting an automatic reversal. *Id.* As mentioned above, structural errors are confined to very limited circumstances and this is not one of those circumstances. *Id.* Additionally, both parties agreed that jurors would not use their notes during deliberations. Under these facts, Biederman cannot now argue a palpable error occurred in refusing to allow

the jurors to use their notes in deliberations.[2] *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 37–38 (Ky.2011) (invited errors are not subject to palpable error review; *Mullins v. Commonwealth*, 350 S.W.3d 434 (Ky.2011)). For the preceding reasons, we discern no palpable error exists; therefore, we affirm.

### D. The Trial Court's Denial of Biederman's Motion for Directed Verdict was not in Error.

 At trial, Biederman moved for a directed verdict on the grounds that the Commonwealth had not proven the bomb used in Riggs's car was capable of causing death. That issue is therefore preserved. Biederman now also argues he was entitled to a motion for directed verdict on all issues because the Commonwealth failed to prove its case in the entirety. That argument is unpreserved and reviewed under the palpable error standard of RCr 10.26. Regardless of the varying standards of review, Biederman's arguments are unpersuasive.

 The test for a directed verdict on appellate review is, "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then [is] the defendant ... entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991). On a motion for directed verdict, the trial court must take the evidence in the light most favorable to the opposing party and assume all evidence presented as true, leaving questions of weight and credibility to the jury. *Baker v. Commonwealth*, 973 S.W.2d 54, 55 (Ky.1998). To survive a motion for directed verdict, the opposing party must have presented evi-

---

2. Had Biederman argued structural error because counsel waived a right only Biederman could waive, his argument might have merit.

However, Biederman does not make that argument before us now.

dence of substance, more than a mere scintilla of evidence. *Commonwealth v. Sawhill,* 660 S.W.2d 3, 5 (Ky.1983).

During its case-in-chief, the Commonwealth presented a plethora of both lay and expert testimony that: (1) from late March 2011 through July 2011 the Biederman family computer had been used to collect information about how to make pipe bombs; (2) Biederman had access to Riggs's car; (3) the majority of the work placing the bomb in the car had to be done somewhere other than the garage outside Riggs's employment; (4) the bomb was armed at the garage outside Riggs's employment; (5) the structure of the bomb was designed to cause property damage, personal injury or death; (6) bomb parts were found in the Biederman home; (7) Riggs and Biederman had a strained marriage precipitated by financial problems; and (8) Riggs and Biederman held a $300,000 life insurance policy.

This evidence cannot be categorized as strings of inferences on top of inferences as Biederman alleges. While none of this evidence alone stands as dispositive, taking the Commonwealth's evidence as true and drawing all inferences in favor of the Commonwealth, the trial court correctly denied Biederman's motion for a directed verdict. There is sufficient evidence to show that this pipe bomb was a weapon of mass destruction; that it was capable of causing death; that Biederman placed it in Riggs's car; that Riggs was injured; and that Biederman intended to kill Riggs with it. Taking the evidence as a whole, it would not have been clearly unreasonable for a jury to find Biederman guilty under the circumstances. The trial court's decision to deny the motion for directed verdict was not clearly erroneous. Therefore, we affirm the trial court's denial of Biederman's motion for directed verdict.

### III. CONCLUSION.

For the forgoing reasons Biederman's convictions of the use of a weapon of mass destruction in the second degree and attempted murder are affirmed.

All sitting. All concur.