Harold L. THOMPSON, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2004–SC–000217–DG.

Supreme Court of Kentucky.

Nov. 23, 2005.

Richard Edwin Neal, Assistant Public Advocate, Department of Public Advocate, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Todd D. Ferguson, Assistant Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

This case comes to us on discretionary review of the Court of Appeals' opinion affirming the judgment of the Fayette Circuit Court, which denied Appellant's claim for RCr 11.42 relief. We granted review to determine whether the lower court erred in finding the Appellant did not receive ineffective assistance of counsel, and thus was not entitled to a new trial. After reviewing the record, we reverse the Court of Appeals, vacate Appellant's convictions and sentence, and remand this case back to the trial court for a new trial.

## I. Facts

This case involves a tragic motorcycle accident that killed eight-year old Autumn Roaden. Appellant was driving his motorcycle in a residential neighborhood in Lexington, Kentucky, when Autumn and her twelve-year old brother, Kyle, ran from their house out into the street chasing after their escaped puppy. Appellant struck and killed young Autumn. He claimed at trial that the accident was unavoidable in that he never saw the child before impact. There was disputed evidence as to whether cars were parked in the area at the time of the accident.

Evidence at trial showed Appellant's blood alcohol level was .10 approximately three hours after the accident. Appellant's explanation was he had consumed alcohol after the accident, but had only had a "swig" of beer some hours before the accident. Urine tests performed after the accident showed traces of marijuana, pain reliever and anti-depressant medication. Blood test results confirmed no presence of drugs in Appellant's blood, but a trace of marijuana. Appellant admitted though, that he was taking his pain and anti-depressant medication as prescribed. Additionally, witness testimony confirmed Appellant fled the scene of the accident and originally lied to the police about his involvement before finally admitting he was the driver of the motorcycle.

Officer Paul Sims was an investigating officer the night of the accident. He also performed an accident reconstruction of the scene and testified at trial regarding his findings. In his assessment, Officer Sims utilized an English study averaging

the running speed of eight-year-old boys.[1] Sims adjusted the calculations from the study to estimate the number of feet per second traveled by eight-year old girls (running), and divided this number into the distance from the curb to the scuff-mark, which police took to be the point of impact. From this, Sims testified to his conclusion that Autumn had been in the roadway 3.38 seconds prior to impact.

Using Appellant's estimated speed of 46 miles per hour, Sims calculated Appellant was some 230 feet away from the point of impact when Autumn first entered the roadway. **Therefore, he concluded Appellant would have had 137 feet within which to stop and avoid impact. Sims reiterated this conclusion by testifying Appellant should have been able to stop with some 26 feet to spare.**

Based on this and other evidence introduced at trial, Appellant was convicted of reckless homicide and being a persistent felony offender in the first degree. He was sentenced to the maximum, twenty years. Only after the trial was it discovered that Officer Sims had made a crucial mathematical error in his calculations regarding the accident. Officer Sims had misplaced a decimal point, which resulted in an inaccurate calculation of the average running speed for eight-year-old girls.

According to Officer Sims, the English study had reported the average running speed of an eight-year-old boy was 11 feet per second and that an eight-year old boy ran 1.31% to 1.55% faster than eight-year-old girls. He divided 11 by the midpoint range, 1.43%, and concluded eight-year-old girls ran approximately 7.69 feet per second. However, 11 feet per second is 43% faster than 7.69 feet per second, not 1.43%. The correct calculation is that 11 feet per second is 1.43% faster than 10.845 feet per second. Accordingly, the correct figure for the average speed of an eight-year-old girl under the purported study would have been 10.845 feet per second. **However, the corrected calculations prove Appellant would not have been able to stop his motorcycle until some 40 feet *after* the point of impact.**

On appeal, the mathematical error was not identified as such in the briefs, and this Court affirmed the conviction, despite Justice Cooper *sua sponte* pointing out the error in his dissenting opinion.

Appellant next filed a motion to vacate his sentence pursuant to RCr 11.42 arguing he received ineffective assistance of counsel because his defense attorney (1) did not retain the services of an expert to review and dispute Officer Sims' calculations; and/or (2) failed to discover the error on his own accord.

The trial court held an evidentiary hearing and overruled Appellant's motion. Specifically, the court found that Officer Sims' testimony was not the key to the trial. Instead, the court felt the most damaging evidence was the fact that Appellant left the scene of the accident. The trial judge stated the trial would have been fairer if Officer Sims' error had been corrected, but she believed Appellant would still have been convicted, and thus, she denied his RCr 11.42 motion. The Court of Appeals inferred from the trial court's finding that even if Appellant had shown his counsel's representation was deficient, he still failed to show any resulting prejudice and thus affirmed the trial court's ruling.

---

1. Officer Sims never reviewed the English study himself, but referred only to a report prepared by an unidentified accident reconstructionist in England which contained the figures from the English study.

## II. Appellant's RCr 11.42 Claim

Criminal Rule 11.42 does not authorize relief from judgment for mere errors of the trial court and "[i]n order for the rule to be invoked there must be a violation of a constitutional right, a lack of jurisdiction, or such violation of statute as to make the judgment void and therefore subject to collateral attack." *Tipton v. Commonwealth*, 376 S.W.2d 290 (Ky.1963).

■ Appellant claims he was denied effective assistance of counsel and due process of law when his counsel failed to retain an independent expert to review Officer Sims' accident reconstruction calculations, or in the alternative, to discover and refute, by his own accord, the mathematical error and resulting conclusion that Appellant should have been able to stop his motorcycle in time to avoid the collision with the victim.

■ We deem it necessary to point out RCr 11.42 motions are "limited to the issues that were not and could not be raised on direct appeal." *Hodge v. Commonwealth*, 116 S.W.3d 463, 467–68 (Ky.2003)(internal citations omitted). "An issue raised and rejected on direct appeal may not be reconsidered in these proceedings by simply claiming that it amounts to ineffective assistance of counsel." *Id* at 468. Therefore, we will not address the issue of whether Officer Sims' testimony should or should not have been admitted into evidence, but only the question of whether Appellant's counsel's failure to discover and inform the jury of Officer Sims' erroneous calculations and conclusions equates to ineffective assistance of counsel.

■ In order to establish his counsel was ineffective, Appellant must satisfy a two-part test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance *prejudiced the defense*. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)(emphasis added); *accord Moore v. Commonwealth*, 983 S.W.2d 479, 482 (Ky. 1998).

■ Therefore, we must first evaluate counsel's performance for errors, keeping in mind "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. "The performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.*

■ Appellant bears a heavy responsibility since a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Haight v. Commonwealth*, 41 S.W.3d 436, 442 (Ky.2001). We are aware that Appellant is not "guaranteed errorless counsel, or counsel judged ineffective by hindsight, but counsel likely to render and rendering reasonably effective assistance." *McQueen v. Commonwealth*, 949 S.W.2d 70 (Ky.1997).

Appellant's counsel testified at the RCr 11.42 hearing that he reviewed Officer Sims' calculations and chose not to hire an opposing expert because Appellant had consistently conveyed to him, as well as testified, that he never saw Autumn before hitting her. Therefore, counsel believed at the time that the braking distance and the running speed of children were non-factors

in the trial. This contrasts with Officer Sims' testimony that the impact site would have been visible from 444 feet away.

Thus, we believe since trial counsel's only defense was that the accident was unavoidable, and counsel was aware the prosecution intended to introduce expert testimony establishing the accident was in fact avoidable with normal reaction times, it was unreasonable not to attempt in some way to contest this evidence or at least, ensure its reliability. For one thing, jurors are undoubtedly greatly influenced by the testimony of someone deemed an "expert". This is especially true if the only countervailing testimony comes from the defendant, the sole person with a strong motive to lie (if the truth would deem him guilty of the crime charged). The Appellant's testimony in this case—that the accident was unavoidable—should not have been relied on as being of equal weight to rebut Officer Sims' supposedly scientific accident reconstruction testimony to the contrary.

We are not saying that in all cases an attorney must hire a rebutting expert witness to avoid being deemed ineffective. What is determinative in this case is that the damning expert testimony was clearly erroneous. The error was of such a nature that a non-mathematical expert discovered it on simple review of the calculations. And the fact that no other attorney, or judge, discovered the error until the case reached this Court on direct appeal does not excuse the error. It is the job of Appellant's counsel, and his counsel solely, to represent the interests of his client. Put simply, no one knew of the error because Appellant's counsel did not make them aware.

The Commonwealth then was able to use Officer Sims' erroneous calculations to turn circumstantial evidence of Appellant's intoxication (possibly after the accident)

into certain evidence of intoxication at the time of the accident. They argued a combination of Appellant's intoxication and speed amounted to reckless behavior. Thus, because Appellant's level of intoxication was crucial in analyzing whether his behavior should be deemed reckless, Officer Sims' conclusion that he should have been able to stop with 26 feet to spare, implying Appellant did not have normal reaction times, was far from a non-factor in the trial. We believe under the circumstances of this case, it was unreasonable for Appellant's counsel not to have either more prudently reviewed Officer Sims' calculations or to have hired an expert to at least help analyze, if not rebut, his conclusions.

█ In measuring prejudice, the second prong of the *Strickland* test cited above, the inquiry is whether there is a reasonable probability that, but for counsel's error(s), the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052(emphasis added); *Bowling v. Commonwealth,* 981 S.W.2d 545, 551 (Ky.1998), *cert denied,* 527 U.S. 1026, 119 S.Ct. 2375, 144 L.Ed.2d 778 (1999). The *Strickland* Court defined reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

We find it important that the *Strickland* Court made clear that "reasonable probability" does not mean that counsel's deficient conduct more likely than not altered the verdict. In specific, the Court stated "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.* This Court has also previously clarified a RCr 11.42 movant need not show that counsel's allegedly deficient per-

formance would have compelled acquittal in order to meet the prejudice prong of *Strickland. Norton v. Commonwealth,* 63 S.W.3d 175, 177 (Ky.2002).[2]

Accordingly, because the Commonwealth utilized Officer Sims' calculations and conclusions to prove Appellant was reckless in causing the death of Autumn Roaden, we believe counsel's failure to discover and inform the jury that Officer Sims' damaging testimony was based on erroneous calculations that, if corrected, would have supported the defense, was prejudicial error.

Had the error been corrected at trial, the Commonwealth's witness would have had to admit, on the stand, Appellant could not have stopped in any event.[3] Although we suppose it is possible that a jury could have been informed of Officer Sims' mistaken calculations and resulting erroneous conclusions and still have decided to convict and sentence as it did the Appellant, that is not the test. *See Rompilla v. Beard,* —— U.S. ——, 125 S.Ct. 2456, 2469, 162 L.Ed.2d 360 (2005). It goes without saying that the corrected testimony might well have influenced the jury's appraisal of Appellant's guilt or innocence or their recommended sentence. *Id.* Thus, the likelihood of a different result, if the error had been discovered and corrected by Appellant's counsel, is "sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

Under the circumstances of this case, we are not such men as can turn our heads from the grossly inaccurate scientific opinions testified to in this case,[4] which indicated the Appellant could have stopped in time—when, with the corrected calculations, the evidence would have been, that he could not!

For the above stated reasons, we reverse and vacate the judgment of convictions and sentence in this case and remand this case back to the trial court for a new trial.

LAMBERT, C.J.; COOPER and JOHNSTONE, JJ., concur.

ROACH, J., dissents by separate opinion with GRAVES and WINTERSHEIMER, JJ., joining that dissent.

Dissenting opinion by Justice ROACH.

The majority opinion certainly states the proper test from *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for establishing whether counsel was ineffective. However, in its analysis of the first prong of *Strickland,* the majority simply ignores applicable legal standards to achieve the outcome it so desperately wants to reach.

In order to satisfy the first prong of the two-part test announced in *Strickland,* Appellant "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. The trial court conducted an eviden-

---

**2.** This is contrary to the trial judge's denial of Appellant's RCr 11.42 motion based on her finding that Appellant would have still have been convicted even if the mistaken calculations had been discovered and the jury informed.

**3.** This is aside from any question of reliability of Officer Sims' analysis and calculations.

Since he'd already given his opinion based upon his mathematics, we would assume he would acknowledge their correct application once shown his errors.

**4.** Officer Sims' was innocent in his mistake, but the effect was devastating to the defense.

tiary hearing to determine if Appellant could make the requisite showing. At the hearing, Appellant's counsel testified that he had been a lawyer since 1976 and had handled two to three hundred criminal cases in circuit court, at least ten to twelve of which involved jury trials. He also testified that (i) he had been aware that the Commonwealth intended to introduce accident reconstruction expert evidence; (ii) he had reviewed the evidence; (iii) he had reviewed the math calculation page but had not recognized the error; and (iv) he had considered retaining an expert but felt it was unnecessary because, after Appellant had informed him and the police that he had not seen the victim, he had concluded that the braking distance was not important to the defense. Despite his failure to recognize the calculation error or retain an independent expert, it was also noted at the hearing that Appellant's counsel nevertheless had *objected* to the accident reconstruction expert evidence when it was presented at trial.

After considering the evidence introduced at the hearing, the trial court specifically found that Appellant's trial counsel (i) mounted a "vigorous defense," (ii) was "very attentive," and (iii) *"missed no objections."* (Emphasis added). With these findings in mind, the trial court ruled that Appellant had failed to show that his trial counsel's performance was deficient.

An appellate court is to "defer to the determination of the facts and witness credibility made by the trial judge." *Haight v. Commonwealth,* 41 S.W.3d 436, 442 (Ky.2001). Despite this mandate, the majority has ignored the evidence and the trial court's findings to hold that Appellant's trial counsel was ineffective. In doing so, the majority has failed to defer to trial court's findings and is focused instead on reaching a desirable result. The Unit-

ed States Supreme Court has rejected such an approach:

> Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.

*Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993).

Moreover, in focusing solely on the outcome, the majority has ignored the proper analysis under the first prong of the *Strickland* test. Instead, we should

> determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.

That said, I believe the failure of Appellant's trial counsel to identify the math error cannot be said to be "outside the wide range of professionally competent assistance." Trial counsel was an experienced attorney who reviewed the evidence and diligently developed a well-reasoned theory of the case. He actually objected to the totality of the accident reconstruction expert evidence, though this objection

was overruled by the trial court. Not a single person, including the several lawyers and the trial judge, identified the math error until Justice Cooper discovered it for the first time on Appellant's direct appeal.

The majority opinion's Monday-morning-quarterback approach is contrary to our well-established precedent in this area. Based on this record, it is dubious to claim that trial counsel made errors so serious that he was not functioning as counsel. In reaching this conclusion, the Court has not only ignored the law on this matter but has engaged in an independent review of the case in contravention of well-settled standards of review. Therefore, I respectfully dissent.

GRAVES and WINTERSHEIMER, JJ., join this dissenting opinion.