**COMMONWEALTH of Kentucky, Appellant,**

v.

**Phillip YORK, Appellee.**

**No. 2005–SC–000348–DG.**

Supreme Court of Kentucky.

Feb. 22, 2007.

As Corrected Feb. 26, 2007.

Gregory D. Stumbo, Attorney General of Kentucky, Michael L. Harned, Assistant Attorney General, Office of Criminal Appeals, Frankfort, for Appellant.

Damon L. Preston, Assistant Public Advocate, Department of Public Advocacy, Amy Robinson Staples, Assistant Public Advocate, Department of Public Advocacy, Frankfort, for Appellee.

Opinion of the Court by Justice SCOTT.

Appellant, Commonwealth of Kentucky, appeals from an opinion and order of the Court of Appeals which reversed an order entered by the Russell Circuit Court denying RCr[1] 11.42 relief to Appellee, Phillip York. The Court of Appeals reversed the circuit court and ordered that Appellee's convictions be vacated because it believed that Appellee's constitutional rights were violated by the ineffective assistance of Appellee's trial counsel. Finding no ineffective assistance of counsel on discretionary review to this Court, we reverse the Court of Appeals; and affirm the order entered by the circuit court denying RCr 11.42 relief to Appellee.

On November 22, 1995, Appellee was indicted for the violent beating and subsequent death of Appellee's neighbor, Billy Bunch. At trial, the evidence was overwhelming that Appellee severely beat the victim in the early morning hours of February 19, 1995. Later that day, the victim was transported to the emergency room of a local hospital. The emergency room physician, Dr. Tolentino, testified that he performed a thorough physical and neurological examination of the victim, but discovered no significant injuries. Consequently, he released the victim several hours after his admission. Three days later, on February 22, 1995, the victim was discovered dead in his bed by his mother.

At trial, the Assistant Chief Medical Examiner, Dr. Weakley–Jones, testified that the victim died from an acute subdural hematoma (blood clot) in his brain. She opined that the hematoma was three to five days old, and was caused by blunt force trauma to the head. She further opined that the hematoma was present on the morning the victim was examined by Dr. Tolentino at the hospital, but that the doctor probably failed to detect it because he did not perform a CT scan or an MRI.

Dr. Tolentino contradicted Dr. Weakley–Jones' testimony. He testified that a skull x-ray would probably have shown an acute subdural hematoma, but that the victim's skull x-ray the morning of his examination

---

1. Kentucky Rules of Criminal Procedure

appeared normal. Other signs of an acute subdural hematoma include neurological abnormalities such as mental sluggishness and unusual pupil dilation. On the day he performed a neurological examination on the victim, he observed none of these signs. Dr. Tolentino concluded that since patients with an acute subdural hematoma tend to show definite signs of illness within several hours of the triggering incident, it was his opinion that the victim did not have an acute subdural hematoma on the morning he was examined at the hospital. He further opined that patients suffering from an acute subdural hematoma would generally die within 24 hours of its occurrence.

Dr. Roy Biggs, a radiologist from the hospital where the victim was examined on February 19, 1995, also testified at trial. Dr. Biggs testified that, by definition, an acute subdural hematoma must develop within 24 hours of the triggering event or incident. Accordingly, if the victim died from an acute subdural hematoma, the injury causing the hematoma must have been inflicted within the 24 hours preceding his death. Dr. Biggs further opined that if the victim did not receive a CT scan or MRI at the hospital, it was likely because he showed no signs of an acute subdural hematoma at the time he was treated. During cross-examination, Dr. Biggs agreed with Dr. Weakley–Jones that a subdural hematoma cannot be detected on a skull x-ray. He further admitted that he was not a forensic expert, he had not reviewed any of the victim's forensic records, and that a minority of doctors are known to use the word "acute" even when they believe the condition did not present itself within 24 hours.

After hearing all the evidence, the jury convicted Appellee of first degree manslaughter and for being a second degree persistent felony offender. For his crimes, Appellee was sentenced to twenty years' imprisonment. On direct appeal, Appellee's convictions and sentence were affirmed in an unpublished opinion rendered by this Court. *York v. Commonwealth*, 97–SC–1025–MR (rendered September 3, 1998).

Thereafter, Appellee filed a motion to vacate his conviction pursuant to RCr 11.42, alleging several grounds which he claimed entitled him to relief. The circuit court initially denied his motion without hearing, but the Court of Appeals vacated this decision and remanded the case for an evidentiary hearing. By the time of the hearing, Appellee alleged only one ground on which he claimed he was entitled to relief—his trial attorneys were ineffective because they failed to retain an independent expert medical witness to rebut the testimony of Dr. Weakley–Jones.

At an evidentiary hearing held on February 13, 2003, Appellee presented evidence from three witnesses: (1) Appellee's trial attorney; (2) Dr. Heidingsfelder, a forensic pathologist; and (3) Appellee himself. Appellee's trial attorney testified that he had been practicing criminal law for approximately thirty years, that he had tried his "share" of murder cases, and that he had a good idea of what "plays to rural juries." In this case, he attempted to prove Appellee's innocence by showing that injuries sustained three days prior to his death could not have caused the acute subdural hematoma that eventually killed the victim. In accordance with this, Appellee's trial counsel called several witnesses who claimed that after he left the hospital, they saw the victim out and about appearing normal. He further relied on testimony offered by Dr. Tolentino and Dr. Biggs which claimed that the victim did not have any signs of an acute subdural hematoma at the time he was examined at the hospital and that an acute subdural

hematoma could not have been caused by injuries sustained three days prior to the victim's death. Appellee's trial counsel opined that the contradictory testimony presented at trial by the two local doctors was more acceptable to a rural jury than a hired medical witness from outside the area. He added that he thought the jury would "put a lot of opinion" in Dr. Biggs since Dr. Biggs was local and well-known. Accordingly, he chose not to seek an outside expert.

After reviewing Appellee's trial and medical records of the victim, Dr. Heidingsfelder felt that Dr. Weakly–Jones' opinion was overstated in that it was impossible to state with certainty the age of the subdural hematoma located in the victim's brain. He opined that while blunt force trauma necessarily caused the hematoma located in the victim's brain, the trauma could have been inflicted anytime between 12 hours and five days prior to the victim's death. He further stated that it was "not an absolute" that a subdural hematoma would cause death or other obvious symptoms within 24 hours of its infliction. Appellee testified that he asked his attorney about retaining an expert and that his attorney assured him that an expert had been secured.

In an order entered February 16, 2004, the circuit court concluded that even if an expert such as Dr. Heidingsfelder had testified, it was not reasonably probable that the outcome of Appellee's trial would have been different. This decision was based on the fact that Dr. Heidingsfelder's testimony was not significantly different from the testimony offered by Dr. Weakley–Jones, and that no evidence was presented regarding the source of any other injuries that may have caused the hematoma. Accordingly, the circuit court denied Appellee's motion to vacate his convictions.

Appellee appealed the denial of his RCr 11.42 motion to the Court of Appeals. In an unpublished opinion rendered April 22, 2005, the Court of Appeals reversed the circuit court's ruling and remanded the case with instructions that the court grant Appellee a new trial. The Court of Appeals held that Appellee's counsel rendered ineffective assistance pursuant to the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) because he did not hire a forensic pathologist, such as Dr. Heidingsfelder, to contradict the testimony offered by Dr. Weakley–Jones. We granted the Commonwealth's petition for discretionary review; and for the reasons set forth herein, we now reverse the Court of Appeals.

■ We have, of course, adopted the two-part test set forth in *Strickland, supra,* to determine whether a constitutional claim of ineffective assistance of counsel has merit. *See, e.g., Thompson v. Commonwealth,* 177 S.W.3d 782 (Ky.2005). In order to show ineffective assistance, a defendant must demonstrate that his trial attorney's performance was both deficient and prejudicial. *Id.* at 785. In this case, the trial attorney's performance was neither deficient nor prejudicial.

■ We first note that the trial court's ruling was sound and accurate in its conclusion that it was not reasonably probable that the outcome of Appellee's trial would have been different if an expert such as Dr. Heidingsfelder had testified. As found by the trial court, Dr. Heidingsfelder's ultimate conclusions did not differ significantly from the testimony offered by Dr. Weakley–Jones. Although he disagreed with Dr. Weakley–Jones as to her certainty regarding the age of the subdural hematoma located in the victim's brain, he nonetheless concluded that the injury causing the hematoma could have been inflicted anywhere between 12 hours and 5 days

prior to the victim's death. Even more notable was the fact that Dr. Heidingsfelder's testimony contradicted the extremely favorable testimony offered by Dr. Tolentino (and to some extent, by Dr. Biggs) that if the victim indeed had a subdural hematoma at the time he visited the hospital, he either would have been dead within 24 hours or they would have, at least, noticed signs or symptoms of its presence. Accordingly, we agree with the trial court that the trial attorney's failure to call an expert such as Dr. Heidingsfelder was not prejudicial.

 Most important, perhaps, to this opinion, however, is that an analysis for prejudice was not even necessary in this case since the trial attorney's performance was not deficient. "A defendant is not guaranteed errorless counsel, or counsel judged ineffective by hindsight, but counsel likely to render and rendering reasonably effective assistance." *Haight v. Commonwealth*, 41 S.W.3d 436, 442 (Ky.2001). We have repeatedly reiterated that "a strong presumption [exists] that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

 Appellee's chief complaint was that Dr. Tolentino and Dr. Biggs were not qualified as forensic experts by the defense. However, it is not necessary "in all cases [for] an attorney [to] hire a rebuttal expert witness in order to avoid being deemed ineffective." *Thompson, supra,* at 786. In this case, additional expert testimony was not critical given the fact that both local doctors testified substantially in favor of the defense's theory of the case. *See Mills v. Commonwealth,* 170 S.W.3d 310, 329 (Ky.2005) (no ineffective assistance where trial counsel failed to hire an expert to support his defense of intoxication because other evidence was produced which tended to support the claim); *Harper v. Commonwealth,* 978 S.W.2d 311, 315 (Ky.

1998) (trial counsel's decision not to present an independent mental health expert was not unreasonable and was consistent with trial strategy). The trial attorney's decision to not utilize an outside forensic expert that likely would have contradicted his two most favorable witnesses was reasonable trial strategy; and it is neither fair nor proper for us to question this decision upon hindsight. *Simmons v. Commonwealth,* 191 S.W.3d 557, 564 (Ky. 2006) ("The mere fact that appellate counsel disagrees with the strategy and tactics employed by a veteran defense lawyer does not result in ineffective assistance by that counsel."); *Baze v. Commonwealth,* 23 S.W.3d 619, 624 (Ky.2000) ("It is not the function of this Court to usurp or second guess counsel's trial strategy.").

Criminal defense attorneys are no more deemed to have deviated from the appropriate standard of care due to a bad result than are medical providers. Counsel in this case put on a good defense for Appellee; the jury just didn't accept it. Accordingly, the decision of the Court of Appeals is reversed; and the order entered by the Russell Circuit Court denying RCr 11.42 relief to Appellee is affirmed.

All concur.

MINTON, J., not sitting.