RENDERED: MARCH 15, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1210-MR
AND
NO. 2022-CA-1483-MR

MARK E. SMITH                                                    APPELLANT


APPEALS FROM MARSHALL CIRCUIT COURT
v.        HONORABLE DAVID C. BUCKINGHAM, SPECIAL JUDGE
ACTION NO. 17-CR-00067


COMMONWEALTH OF KENTUCKY                                    APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: LAMBERT, McNEILL, AND TAYLOR, JUDGES.

LAMBERT, JUDGE: Mark E. Smith, *pro se*, appeals from two orders of the

Marshall Circuit Court denying his post-conviction motions brought under

Kentucky Rules of Criminal Procedure (RCr) 11.42 and Kentucky Rules of Civil Procedure (CR) 60.02.[1]  We affirm.

## FACTUAL AND PROCEDURAL HISTORY

On March 30, 2017, Smith was indicted on charges of first-degree arson and first-degree assault.  The charges relate to an incident that occurred on January 28, 2017, inside the home of the victim, Edward Harris, during which Smith attacked Harris with a shovel and set fire to a living room reclining chair.  A jury trial was conducted in August 2019, resulting in Smith's conviction on both charges and the imposition of a 25-year sentence, which the Supreme Court of Kentucky affirmed on direct appeal in *Smith v. Commonwealth*, No. 2019-SC-0725-MR, 2021 WL 4487297 (Ky. Sep. 30, 2021).

Smith filed an RCr 11.42 motion in June 2022, alleging ineffective assistance of counsel based in part on a failure to pursue an alternative perpetrator defense.  Smith asserted the crimes for which he was convicted were committed by acquaintances known to him and Harris; namely, Mike Enoch and his son, Bryan Enoch.  The trial court denied the motion without an evidentiary hearing.  On October 18, 2022, Smith subsequently filed a CR 60.02 motion to vacate his sentence and conviction based on newly discovered evidence, which was also

---

[1] Smith filed two appeals challenging separate orders, and the appeals were not consolidated. However, the appeals stem from issues relating to the same criminal circuit court action and are substantially related.  For these reasons, we elect to issue a joint opinion.

denied by the trial court without an evidentiary hearing.  This appeal followed.[2]

Additional facts will be discussed as necessary.

## STANDARD OF REVIEW

"We review a trial court's decision whether to grant relief pursuant to CR 60.02 or RCr 11.42 for an abuse of discretion."  *Stanford v. Commonwealth*, 643 S.W.3d 96, 99 (Ky. App. 2021) (citations omitted).  "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."  *Id.* (internal quotation marks and citations omitted).  Two factors must be satisfied in order to establish a claim of ineffective assistance of counsel:  1) "counsel's performance was deficient"; and 2) "the deficient performance prejudiced the defense[.]"  *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).

Counsel's legal representation should be demonstrated to have fallen "below an objective standard of reasonableness" when "considering all the circumstances."  *Id.* at 687-88, 104 S. Ct. at 2064-65.  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of

---

[2] Smith's brief does not provide any record pinpoint citations or a preservation statement. However, because we can readily determine the claims on their merits based on the record before us, we decline to impose any sanctions and proceed with a normal review.  *See Ford v. Commonwealth*, 628 S.W.3d 147, 154 (Ky. 2021); *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) ("Our options when an appellate advocate fails to abide by the rules are:  (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions; or (3) to review the issues raised in the brief for manifest injustice only[.]") (citations omitted).

the proceeding." *Id.* at 693, 104 S. Ct. at 2067. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068.

"On appellate review, great deference is afforded to counsel's performance. There is a strong presumption that counsel acted reasonably and effectively." *Ford v. Commonwealth*, 628 S.W.3d 147, 156 (Ky. 2021). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

"[T]o be entitled to relief under RCr 11.42, the movant must state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds." *Roach v. Commonwealth*, 384 S.W.3d 131, 140 (Ky. 2012) (internal quotation marks and citation omitted). "[W]ithout it the trial court cannot tell whether an evidentiary hearing is necessary." *Id.* "Conclusory allegations that counsel was ineffective without a statement of the facts upon which those allegations are based do not meet the rule's specificity standard and so warrant a summary dismissal of the motion." *Id.* (internal quotation marks and citation omitted). "RCr 11.42 motions are not intended to conduct further discovery or fishing expeditions." *Prescott v.*

*Commonwealth*, 572 S.W.3d 913, 926 (Ky. App. 2019). "Thus the stated purpose of the rule is to provide a forum for *known grievances*, not to provide an opportunity to research for grievances." *Gilliam v. Commonwealth*, 652 S.W.2d 856, 858 (Ky. 1983) (emphasis added).

## ANALYSIS

Smith contends that the trial court erroneously denied an evidentiary hearing on the merits of five arguments asserted under RCr 11.42 that trial counsel ineffectively:  1) failed to present a defense; 2) failed to request funds to hire an expert witness on arson; 3) failed to seek funds to retain a forensic psychiatrist to evaluate Smith's mental health; 4) failed to secure funds to obtain an expert witness on false confessions; and 5) failed to seek a continuance to investigate a last minute disclosure from the Commonwealth that Harris was involved in drug dealing from his home.  Additionally, Smith separately appealed the trial court's denial of his CR 60.02 motion, in which he sought a new trial based on newly discovered evidence.  Due to the related nature of the claims concerning expert witness funding, we address those jointly.

I.     <u>Failure to Present a Defense</u>

Smith argues that trial counsel failed to conduct any investigation of other pertinent witnesses, apart from those ultimately called to testify by the Commonwealth.  Specifically, Smith references his RCr 11.42 memorandum of

law, in which he asserted there were two exculpatory witnesses (his sister, Jennifer Smith, and his housemate, Emily Shekell), whom trial counsel failed to interview. Smith also asserts trial counsel failed to investigate his medical history, which would have established he was suffering from post-traumatic stress disorder (PTSD). The trial court ruled these claims were not pled with the requisite specificity required under RCr 11.42(2).[3] We agree.

Smith's memorandum of law made a general passing reference to these witnesses and cited to attached exhibits without offering any contextualization as to their significance. *See Roach*, 384 S.W.3d at 140 ("If general allegations . . . were sufficient, RCr 11.42 would easily be turned into a discovery device, a result which we have several times noted is contrary to the rule's purpose."). In regard to Jennifer, Smith pled that she had "suspicions and fears" regarding Mike and Bryan Enoch possibly "committing the offenses." A footnote in the pleadings cited to an attached exhibit consisting of an e-mail sent by Jennifer to Marshall County Sheriff Department's Detective Matt Hilbrecht. The e-mail alluded to a potential motive by the Enochs, but nothing demonstrated

---

[3] Smith's brief argues that the trial court should have afforded him an opportunity to be appointed counsel who would have reviewed the merits of his claims and decided whether to supplement and assist him. However, a defendant is not entitled to the appointment of counsel without first demonstrating an evidentiary hearing is warranted. *See Fraser v. Commonwealth*, 59 S.W.3d 448, 453 (Ky. 2001) ("If an evidentiary hearing is not required, counsel need not be appointed, because appointed counsel would [be] confined to the record.") (internal quotation marks and citation omitted).

this witness had direct knowledge establishing these suspected alternative suspects were the actual perpetrators or that she could provide likely leads to admissible evidence.

To present a trial defense of an alternative perpetrator, a defendant must present "evidence of some logical, qualifying information to enhance the proffered evidence beyond speculative, farfetched theories that may potentially confuse the issues or mislead the jury." *Geary v. Commonwealth*, 490 S.W.3d 354, 358-59 (Ky. 2016) (internal quotation marks and citation omitted). At best, this exhibit only demonstrates a speculative theory from this witness. *See Gray v. Commonwealth*, 480 S.W.3d 253, 268 (Ky. 2016) ("[Alternative perpetrator]-evidence theories must be supported by more than speculation or exculpatory name-dropping when assessing the probativeness of evidence[.]"); *Bowling v. Commonwealth*, 981 S.W.2d 545, 550 (Ky. 1998). In the absence of other pleadings, it is unclear whether Jennifer's testimony would have even been admissible at trial, and to the extent trial counsel's interviewing of this witness would have led to admissible exculpatory evidence, we will not speculate.

As it concerns Shekell, Smith argued to the trial court that "her testimony would have brought new light onto [Smith's] demeanor and would have directly challenged part of the Commonwealth's narrative of events." Smith included an attached exhibit consisting of a summary transcript of a defense

-7-

investigator's interview with Shekell. When weighed against Smith's taped confession, we do not believe any of Shekell's statements regarding Smith's demeanor, which she alleged to have observed on the day of the crime, would have resulted in a different outcome. *See Tigue v. Commonwealth*, 600 S.W.3d 140, 163 (Ky. 2018) ("A confession is like no other evidence. Indeed, the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him[.]") (internal quotation marks and citation omitted).

Lastly, Smith asserts his medical history would have established he was diagnosed with PTSD. At trial, the Commonwealth called Smith's diagnosis into doubt by impeaching statements Smith made to law enforcement investigators indicating he developed PTSD during his time in the military:

> Smith blamed his outburst on uncontrolled Post Traumatic Stress Disorder (PTSD) resulting from his deployment as an Army special forces soldier and the horrors he saw overseas. Following the interview, Hilbrecht received a certified copy of Smith's military record from The National Archives. The record showed that Smith served for two years and two months before being discharged. Smith was a truck driver in a transportation unit located in Fort Bragg, North Carolina and had never been deployed to a combat zone, and in fact, had never been outside the United States.

*Smith*, 2021 WL 4487297 at *2. Smith argued to the trial court that trial counsel erred by failing "to investigate [his] medical history or how it *might* have played into a false confession." This claim is also speculative and does not warrant an

-8-

evidentiary hearing.  *See Mills v. Commonwealth*, 170 S.W.3d 310, 328 (Ky. 2005), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009) ("A claim that certain facts *might* be true, in essence an admission that Appellant does not know whether the claim is true, cannot be the basis for RCr 11.42 relief.").

II.     Failure to Request Funding for Expert Witnesses

Smith maintains that funding for an arson expert should have been secured to rebut testimony from Detective Hilbrecht.  Detective Hilbrecht testified he received law enforcement training in arson investigations.  Smith contends an arson expert was necessary to establish that the fire was not set with the purpose of damaging Harris' home.  This claim is rebutted by the record.

Detective Hilbrecht did not testify in the capacity of an arson expert and did not offer an opinion indicating the fire was set with the specific purpose to burn down or damage the home.  Thus, an arson expert was not necessary to rebut this testimony.  *See Commonwealth v. York*, 215 S.W.3d 44, 48 (Ky. 2007) ("[I]t is not necessary in all cases [for] an attorney [to] hire a rebuttal expert witness in order to avoid being deemed ineffective.") (internal quotation marks and citation omitted).

Additionally, Smith contends an "arson expert would have testified that the fire was set in a manner where the structure would not burn."  However,

Robert Fortier, a responding firefighter who testified for the Commonwealth, already conceded on cross-examination that the fire was beginning to die out, and the structure of the home had not otherwise ignited. Any additional testimony by an arson expert on this point was unlikely to change the outcome.

A forensic psychiatrist, Smith asserts, should have been obtained to evaluate him and establish he suffered from PTSD. An expert was not necessary to establish this if Smith had access to medical records documenting his diagnosis. Also, for the reasons already stated, Smith did not sufficiently plead how evidence of his PTSD would have changed the outcome of the trial. On appeal, Smith argues that his PTSD diagnosis could have advanced an extreme emotional disturbance defense. However, this was not pled before the trial court in any of the RCr 11.42 filings, and we will not entertain it on appeal particularly when the trial court denied this expert funding claim for failure to comply with the rule's specificity requirement. *See Reg'l Jail Auth. v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989) ("The Court of Appeals is without authority to review issues not raised in or decided by the trial court.").

Finally, Smith asserts a false confessions expert would have impeached the reliability of his confession to the police. Smith indicated to the trial court in his RCr 11.42 memorandum's statement of facts that he drove the Enochs to Harris' home for, what he assumed, was a drug transaction, but he

waited in the car while they were inside. Smith further asserted that Harris and he were in debt to the Enochs, and the Enochs had violently threatened Smith and his family over the debt. Smith stated he discovered what had happened to Harris the following day, and he and his family were threatened with violence if Smith did not remain silent. Smith contended his PTSD coupled with the threats made against him and his family motivated him to falsely confess to the police. *See Tigue*, 600 S.W.3d at 162 ("[I]t has been held that though expert testimony regarding the phenomenon of false confessions would not be appropriate in every case, *when relevant indicia are present*, and the proffered testimony is reliable, a defendant should be allowed to present expert testimony on the subject.") (internal quotation marks and citation omitted) (emphasis added).

Smith at no point ever pled that he informed his attorney that the Enochs were the actual perpetrators or that they threatened him to remain silent. As a result, without any indication trial counsel was aware of this information, it cannot be held that trial counsel was deficient in failing to pursue an expert witness on false confessions, and we will not presume facts that are not pled. *See Brown v. Commonwealth*, 253 S.W.3d 490, 499 (Ky. 2008) (citing *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066) ("Counsel's trial actions can reasonably be based on strategic choices made by the defendant *and on information supplied by the defendant*, and when a defendant has given counsel reason to believe that pursuing

certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.") (internal quotation marks and citations omitted) (emphasis added); *Hodge v. Commonwealth*, 116 S.W.3d 463, 468 (Ky. 2003), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009) ("The court will not presume that facts omitted from the motion establish the existence of such a violation."). In the absence of such pleadings, Smith did not otherwise present sufficient facts demonstrating why a PTSD diagnosis alone would have motivated him to confess to a crime he did not commit.

III.    Failure to Investigate Harris' Involvement in Drug Dealing

Smith proposes that trial counsel should have requested a continuance of the trial to investigate the Commonwealth's late disclosure that Harris was involved in drug dealing from his home. A September 9, 2019, order entered by the trial court indicated "there was a recording in which the alleged victim made statements that the Defense believed could lead to exculpatory evidence." Smith's pleadings and the record do not provide any additional insight as to what these statements were.

Smith's own pleadings established he was already aware Harris was selling drugs from his home. The video record also demonstrates that, during an in-chambers preliminary discussion on the first day of trial, trial counsel attempted

-12-

to secure a dismissal of the charges due to the Commonwealth's late disclosure. During this discussion, trial counsel indicated an attempt was made to interview Harris, but he refused to speak with anyone associated with the defense. Additionally, trial counsel stated that Smith had informed police that Harris was involved in drug dealing.

Smith argued that an investigation into Harris' phone records would have provided proof of his illegal drug activity, but he does not specifically state how. It is doubtful that the phone records alone, without other corroborating evidence, would provide explicit proof of Harris' involvement in drug activity. Thus, with nothing pled demonstrating that further investigation by trial counsel would have uncovered a testifying witness or other relevant evidence contextualizing the phone records or establishing Harris' involvement in drugs, we cannot conclude Smith was prejudiced by trial counsel's not having made a request for a continuance.

IV.   Newly Discovered Evidence

Smith's CR 60.02 motion asserts newly discovered evidence in the form of an alleged unsworn[4] written statement from a witness named Rick Hensley signed on April 29, 2020. Hensley is identified as a former police officer from an unidentified law enforcement agency. His statement indicates he was informed by

---

[4] Smith pled that this statement was sworn, but it does not contain a notary certification.

an unnamed girlfriend of one of "two others" who had "set up" Smith "to take the fall for the case."

Smith did not submit a brief containing an argument addressing this issue, and the Commonwealth argues the failure to do so constitutes a waiver. *See Serv. Fin. Co. v. Ware*, 473 S.W.3d 98, 103 (Ky. App. 2015) ("Questions . . . not argued in the briefs, will not be considered by the Court of Appeals.") (internal quotation marks and citation omitted). The Commonwealth is correct, but regardless, we can determine Smith's claim is meritless.

Smith asserts that, in his CR 60.02 motion, he had raised this claim in his RCr 11.42 motion, but the trial court failed to address it.[5] A review of Smith's RCr 11.42 motion contains no further detailed pleadings discussing this claim outside of what can be read in Hensley's unsworn statement which was attached as an exhibit. Thus, the claim was insufficiently pled under RCr 11.42(2). Lastly, the written statement does not constitute newly discovered evidence because Hensley's assertion constitutes inadmissible hearsay. *See Yates v. Commonwealth*, 375

---

[5] The proper procedural mechanism would have been a motion seeking additional findings pursuant to CR 52.02. *See* RCr 11.42(6) ("A final order shall not be reversed or remanded because of the failure of the court to make a finding of fact on an issue essential to the order unless such failure is brought to the attention of the court by a written request for a finding on that issue or by a motion pursuant to [CR] 52.02."). Otherwise, raising this claim in a subsequent CR 60.02 motion would be successive. *See Sanders v. Commonwealth*, 339 S.W.3d 427, 437 (Ky. 2011) ("[CR 60.02] is not intended as merely an additional opportunity to raise claims which could and should have been raised in prior proceedings, but, rather, is for relief that is not available by direct appeal and not available under RCr 11.42." (internal quotation marks and citation omitted)).

S.W.2d 271, 272 (Ky. 1964) ("Obviously, the testimony . . . was hearsay.  Such proffered testimony is not newly discovered evidence; it is not evidence at all.").

## IV. CONCLUSION

For the foregoing reasons, we affirm the Marshall Circuit Court's denial of Smith's RCr 11.42 motion and CR 60.02 motion for relief.

ALL CONCUR.

BRIEF FOR APPELLANT:

Mark E. Smith, *pro se*
LaGrange, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky