RENDERED: JUNE 5, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1558-MR

SKIP LEE HANSEN                                           APPELLANT

v.             APPEAL FROM MCCRACKEN CIRCUIT COURT
             HONORABLE JOSEPH ROARK, JUDGE
             ACTION NO. 18-CR-00221

COMMONWEALTH OF KENTUCKY                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, KAREM, AND TAYLOR, JUDGES.

KAREM, JUDGE: Skip Lee Hansen ("Hansen") appeals from the McCracken Circuit Court's order denying his Kentucky Rule of Criminal Procedure ("RCr") 11.42 motion after a hearing. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In its opinion affirming Hansen's conviction on direct appeal, a panel of this Court relayed the facts of the case as follows:

Hansen and Alice[1] were involved in a relationship for approximately ten years. When Alice first met Hansen, she had a four-year-old daughter, Betty, from a previous relationship. At some point, Hansen, Alice, and Betty began living together. Over the next few years, Betty had a good relationship with Hansen, whom she viewed as a father figure. Later, Hansen and Alice had domestic difficulties. The couple ended their relationship and began living apart. Nonetheless, even though Hansen was not Betty's biological father, Alice permitted Hansen to have weekend visitations with Betty at his home in McCracken County.

On January 17, 2018, Alice and Hansen had been arguing all day. Betty, who was fifteen years old at the time, had recently returned from a visit with Hansen. Alice wanted to know if Hansen had been saying negative things about her to Betty, so she checked Betty's cell phone for text messages regarding their issues. Instead, she found nude photographs of Betty which had been sent to Hansen's cell phone number. Alice called Hansen, who denied knowing why Betty sent the nude photographs to him and claimed he did not request them. He also claimed Betty probably sent the photographs to him accidentally, stating she "sends nudes to everyone."

Not satisfied with this explanation, Alice called the McCracken County Sheriff's Department, which began its investigation. The investigating detectives interviewed Alice and Betty and took possession of

---

[1] The Court used pseudonyms in place of the victim's mother's name ("Alice") and the victim's name ("Betty").

Betty's cell phone. Betty's cell phone contained a Snapchat account. One of the investigating detectives would later describe Snapchat as a "secretive" messaging application, because it automatically deletes texts and photographs after the recipient views them. However, upon logging into the Snapchat account from Betty's cell phone, investigators were able to recover text conversations between Betty and Hansen, as well as videos and photographs she had sent to him. One of the videos depicted Betty massaging her bare breast. The date stamp on the video file indicated Betty was thirteen years old at the time the video was taken. In one of their logged text conversations, Hansen sent Betty a one-word message: "NUDES!" Betty interpreted this as a request for nude photographs of herself.

Over the following week, with Alice's cooperation, the investigating detectives conducted and recorded two monitored telephone conversations to Hansen, referred to as "controlled calls." The first controlled call was between Alice and Hansen, and the second was between Betty and Hansen. In the first controlled call, Hansen denied wrongdoing, but admitted Betty would sleep next to him in his bed because it was "comfortable." In the second controlled call, Hansen urged Betty to say she had lied and invented the allegations against him.

According to Betty, the nature of her relationship with Hansen changed when she was eleven years old and Hansen still lived with Betty and her mother. Hansen began touching her vagina at night when she went to bed, which eventually progressed to digital penetration. Betty said she first had sexual intercourse with Hansen at some point between August and October 2017, while she was visiting him at his home in McCracken County. On December 16, 2017, Betty said she was asleep in Hansen's bed when she woke up to find him taking photographs of his penis against her buttocks. Betty denied sending the photograph to Hansen, stating Hansen

-3-

sent the photograph to himself from her cell phone. A second incident of sexual intercourse between Betty and Hansen occurred on December 23, 2017.

Based on the interviews, controlled calls, and the examination of Betty's cell phone, investigators successfully sought an arrest warrant for Hansen and a search warrant for electronic devices and storage media in Hansen's home. After Hansen's arrest, the investigators recovered computers, cell phones, tablets, memory cards, and flash drives. After a forensic examination of these devices, the investigators found multiple photographs of Betty, some of which were identified as having been taken in Hansen's bedroom. One photograph shows Betty displaying her vagina to the camera. Another photograph shows a male's penis next to a female's buttocks. Betty would later testify she recognized herself in that photograph due to a birthmark. Two photographs show Betty smoking marijuana in Hansen's living room.

The McCracken County grand jury thereafter indicted Hansen on one count of third-degree rape, one count of first-degree sexual abuse, and two counts of possession or viewing of matter portraying a sexual performance by a minor. After the investigating detectives recovered more forensic evidence from the electronic devices found at Hansen's home, the Commonwealth successfully sought a superseding indictment. The new indictment charged Hansen with two counts of third-degree rape, one count of second-degree unlawful transaction with a minor (marijuana), one count of third-degree sodomy, two counts of first-degree sexual abuse, three counts of possession or viewing matter portraying a sexual performance by a minor, and six counts of using a minor under age sixteen in a sexual performance.

At trial, the jury heard testimony consistent with the foregoing narrative from the investigating detectives,

Alice, and Betty. The jury also viewed the texts, videos, and photographs recovered from Betty's cell phone and from the electronic devices seized at Hansen's residence. Hansen testified in his defense and admitted he gave Betty marijuana, though he denied ever sending nude photographs of Betty to himself. He also denied having sexual intercourse with Betty or touching her inappropriately.

Following deliberation, the jury found Hansen guilty of two counts of third-degree rape, one count of second-degree unlawful transaction with a minor (marijuana), one count of first-degree sexual abuse, three counts of possession or viewing matter portraying a sexual performance by a minor, and six counts of using a minor in a sexual performance. The jury fixed Hansen's sentence at five years for each of the Class D felonies and eighteen years for each count of use of a minor in a sexual performance, which is a Class B felony. The jury recommended concurrent sentencing for the convictions, resulting in a term of eighteen years' imprisonment. The trial court entered its final judgment on January 16, 2019, sentencing Hansen in accordance with the jury's verdict.

*Hansen v. Commonwealth*, No. 2019-CA-000132-MR, 2020 WL 4512883, at *1-2

(Ky. App. Jul. 31, 2020) (footnotes omitted).[2]

Hansen directly appealed his conviction to this Court in January 2019.

In July 2020, this Court affirmed on all three issues that Hansen raised, and the

judgment became final in September. *Id*. at *1.

---

[2] We cite this case pursuant to Kentucky Rule of Appellate Procedure ("RAP") 41(A).

In August 2021, Hansen filed a motion to vacate under RCr 11.42 in the McCracken Circuit Court. The motion does not appear in the record on appeal, but the master index at the beginning of the post-conviction trial record notes that a motion to vacate was filed on August 24, 2021. The Commonwealth filed a response to the motion, and Hansen filed a reply. The court appointed counsel for Hansen, and counsel eventually filed a supplement to the original RCr 11.42 motion. The circuit court held an evidentiary hearing, and the parties filed post-hearing briefs. Ultimately, the circuit court denied Hansen's motion. This notice of appeal followed.

We will discuss further facts as they become relevant.

## ANALYSIS

On appeal, Hansen argues that his counsel was ineffective for failing to consult a digital forensics expert in preparation of his defense and for introducing certain witness testimony during Hansen's case-in-chief "that corroborated the Commonwealth's case and contradicted [Hansen's] theory of defense."

### 1. *Strickland* Factors and Our Standard of Review

In a motion brought under RCr 11.42, "[t]he movant has the burden of establishing convincingly that he or she was deprived of some substantial right which would justify the extraordinary relief provided by [a] post-conviction

proceeding." *Simmons v. Commonwealth*, 191 S.W.3d 557, 561 (Ky. 2006),

*overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151, 159

(Ky. 2009) (citations omitted). "RCr 11.42 motions are limited to the issues that

were not and could not be raised on direct appeal." *Id*. at 568 (citation omitted).

Specifically, a successful petition for relief under RCr 11.42 for

ineffective assistance of counsel must survive the twin prongs of "performance"

and "prejudice" provided in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.

Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In describing these two factors, the

Kentucky Supreme Court has stated that:

> [a] "deficient performance" contains errors so serious
> that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.
> Second, the appellant must show that counsel's deficient
> performance prejudiced his defense at trial. This requires
> showing that counsel's errors were so serious as to
> deprive the defendant of a fair trial, a trial whose result is
> reliable. An appellant must satisfy both elements of the
> *Strickland* test in order to merit relief.

*Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016) (internal quotation

marks and citations omitted).

Regarding the first prong, "[t]he proper measure of attorney

performance remains simply reasonableness under prevailing professional norms."

*Strickland*, 466 U.S. at 688. Moreover, Hansen's trial counsel has "a strong

presumption" in his favor that the conduct fell "within the wide range of

reasonable professional assistance." *Haight v. Commonwealth*, 41 S.W.3d 436, 442 (Ky. 2001), *overruled on other grounds by Leonard*, 279 S.W.3d at 159.

As to the second prong, to establish actual prejudice, the appellant must show a "reasonable probability" of a different outcome for the proceeding. *Bowling v. Commonwealth*, 981 S.W.2d 545, 551 (Ky. 1998) (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Teague v. Commonwealth*, 428 S.W.3d 630, 633 (Ky. App. 2014) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

Appellate review of counsel's performance under *Strickland* is *de novo*. *McGorman*, 489 S.W.3d at 736. "Denial of RCr 11.42 relief is reviewed for abuse of discretion." *Prescott v. Commonwealth*, 572 S.W.3d 913, 920 (Ky. App. 2019) (citations omitted). "The test is 'whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Id.* (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

### 2. **Discussion**

Hansen first argues that his counsel was ineffective for failing to consult with a digital-forensics expert as a part of his defense. As required by the first prong of the *Strickland* test, we must analyze whether trial counsel's decision was deficient in that it fell below an objective standard of reasonableness.

In this case, we agree with the circuit court that trial counsel's decision to not call a digital-forensics expert as a witness was based on reasonable trial strategy. As discussed in *Strickland*:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (citation omitted). Indeed, "strategic choices made after [a] thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. "It is not the function of this Court to usurp or second guess counsel's trial strategy." *Commonwealth v. York*, 215 S.W.3d 44, 48 (Ky. 2007) (quoting *Baze v. Commonwealth*, 23 S.W.3d 619, 624 (Ky. 2000), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d at 159).

At least twice during Hansen's evidentiary hearing on his RCr 11.42 motion, counsel expressed his thoughts on the trial strategy behind declining to retain a digital-forensics expert. First, he said, "I'm not sure why I would consult a

-9-

computer expert in the first case if the defense is to admit to recording the video."[3]

He further stated: "I'm not sure how a computer expert fits in the first case [when] the defense is 'Yes, I recorded that video.'"

> As discussed by the circuit court:
>
> Given [trial counsel's] strategy [in this case], there is no
> reasonable purpose for a digital forensics expert.
> [Hansen] was admitting the videos existed.  An expert
> may have been able to confirm this theory by analyzing
> how the video came to existence, but this adds no value
> to [Hansen's] argument.  Thus, [trial counsel's] decision
> not to consult [an] expert does not fall below this
> objective standard of reasonableness.

Because Hansen's trial counsel did not deficiently perform by not consulting a digital-forensics expert or having one testify for Hansen, we affirm the circuit court as to this argument.

> We further agree with the circuit court's analysis concerning the second *Strickland* factor – prejudice:
>
> Even assuming the performance here was deficient . . .
> there is no evidence [Hansen] was prejudiced.  There is
> no evidence the expert would be beneficial in the defense
> or swaying the jury to a different conclusion.  [Hansen]
> admitted the videos existed and the timestamps of said
> videos were unchallenged.

Thus, we affirm as to this issue.

---

[3] Hansen's counsel had successfully defended him in a recent and prior trial against allegations relating to photos of a minor by admitting to having the photos but maintaining they were of a consenting adult.

-10-

Hansen's second argument on appeal is that his counsel was ineffective because one of the witnesses called by trial counsel during Hansen's case-in-chief—David Peters—gave testimony that corroborated the Commonwealth's case and harmed rather than helped Hansen. At trial, Peters was asked if he had ever heard Betty say anything about this case. He testified: "If I remember correctly, her exact words were: she said she did not want to see Skip go to jail; that her mother was putting her up to it; and that he had never forced her."

At the evidentiary hearing on Hansen's RCr 11.42 motion, trial counsel testified about his decision to have Peters testify. When asked how this decision fit into his trial strategy, trial counsel answered: "It doesn't. It was most likely just mitigation. It doesn't fit into the narrative of not committing the crime." In denying Hansen's RCr 11.42 motion, the circuit court observed that Peters's testimony "could be interpreted to be both helpful and unhelpful to [Hansen's] defense."

Again, it was within trial counsel's discretion to devise trial strategy. Trial counsel's decision to present Peters's testimony was at least an attempt to cast Hansen in a better light. As noted by the circuit court, it "may not have been the most successful strategic move." However, it was strategy nonetheless, and it enjoys a presumption of soundness under these circumstances and did not fall

below *Strickland*'s objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064.

Moreover, there was no reasonable probability that but for counsel's alleged errors, the result of the proceeding would have been different. Aside from Peters's testimony, the evidence against Hansen was strong. Peters's statement was not the dispositive testimony during Hansen's trial. Indeed, as the circuit court noted, Peters's testimony was "largely based on what he overheard from [Betty]. It is doubtful any reasonable juror would put major weight into such testimony rather than the first-hand testimony of [Betty]." Thus, the circuit court did not abuse its discretion in declining to find prejudice on this point.

## CONCLUSION

For the foregoing reasons, we affirm the McCracken Circuit Court's order denying Hansen's RCr 11.42 motion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

David L. Stewart
Bailey E. Brown
Assistant Public Advocates
La Grange, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph Crawford White
Assistant Solicitor General
Frankfort, Kentucky